UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :
NEWS CORPORATION,                                            :
                                                             :   **ORDER COMPELLING**
                                              Plaintiff,     :   **ARBITRATION**
                 -against-                                   :
                                                             :   21 Civ. 4610 (AKH)
                                                             :
CB NEPTUNE HOLDINGS, LLC and CB                              :
NEPTUNE PROMOTIONS INC.,                                     :
                                                             :
                                                             :
                                              Defendants.    :
                                                             :
------------------------------------------------------------ X

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Plaintiff News Corporation and Defendants CB Neptune Holdings, LLC and CB Neptune Promotions Inc. executed a Share and Asset Purchase Agreement (the "Agreement") for Defendants to purchase the News America Market ("NAM") business. The Agreement provided a process for adjusting the purchase price after the closing with disputes to be decided by an independent accounting firm ("IAF"). In its complaint, Plaintiff seeks a declaration that the IAF cannot consider allegedly untimely revenues as part of Closing Net Working Capital provided by Defendant. Defendant moves to compel arbitration, or in the alternative, to dismiss Plaintiff's complaint. ECF No. 16. For the reasons provided below, Defendant's motion is granted in part and denied in part.

## BACKGROUND

        Plaintiff and Defendants executed a Share and Asset Purchase Agreement on March 31, 2020. Complaint ("Compl.") ¶ 9, ECF No. 1. The Agreement required Defendants to prepare and deliver a Final Written Closing Statement within 90 days of the closing date. *Id.* ¶ 10. The Statement was to include certain calculations, calculated in accordance with the

1

Applicable Accounting Principles and based exclusively on the facts and circumstances, as they existed "as of" the day immediately before the Closing. *Id.* ¶¶ 10–11. Section 2(c) of the Agreement includes a procedure for resolving disputes as to these calculations:

The Final Written Closing Statement was to become binding 30 days after delivery unless Plaintiff delivered to Defendants a Notice of Disagreement. *Id.* ¶ 12. During the 30 days following delivery of the Notice of Disagreement, the parties were required "in good faith [to] resolve in writing any differences that they may have [had] with respect to [certain] calculation[s]." *Id.* ¶ 13. If the parties were unable to resolve any of these disputed items with the 30-day period, the parties were required to "submit, in writing" "their views as to the correct nature and amount of each item remaining in dispute and the amount of Closing Net Working Capital" to the IAF. ECF No. 1, Ex. 1. The IAF's role was "limited to correcting mathematical errors and determining whether the items and amounts in dispute were determined in accordance with the definitions, terms and condition of th[e] Agreement . . . ." and was authorized to "consider only those items and amounts in [the parties'] respective calculations . . . that are identified as being items and amounts to which [the parties] have been unable to agree." *Id.* Once the IAF "resolve[d] the disputed items and amounts," it would render a "written determination that would become "conclusive and binding." *Id.*

Notwithstanding the agreement to submit disputes as to calculations to the IAF, Section 9.10 of the Agreement states that "[e]ach of the parties irrevocably agrees that any legal action or proceeding arising out of or relating to this Agreement brought by any party or its successors or assigns against the other party shall be brought and determined in any New York state or federal court sitting in the Borough of Manhattan in the city of New York . . . ." *Id.*

2

Following the Closing, the parties disputed certain items of revenue recognition. After Defendants tendered their Final Closing Statement, Plaintiff tendered a Notice of Disagreement.  ECF No. 20-5.  Plaintiff subsequently requested additional information from Defendants, and upon reviewing NAM spreadsheets, Defendants realized that only some revenue items should have been included in the Closing Net Working Capital calculations and tendered new calculations on October 26, 2020.  ECF No. 20-6.  After good-faith negotiations, the parties resolved the majority of the outstanding disputes, save for the two at issue here, which include recognized revenue for two cycles.  Plaintiff refused to submit the Defendants' revised Closing Net Working Capital Calculations to the IAF, insofar as they related to 66recognized revenue for only one disputed cycle or the timeliness of such revised calculations.  Compl. ¶ 8. Defendants now move to compel arbitration, or in the alternative, to dismiss the complaint for failure to state a claim upon which relief may be granted.  ECF No. 17.

## DISCUSSION

"A refusal to arbitrate by the non-moving party is 'a prerequisite to compelling arbitration' under the Federal Arbitration Act ('FAA' [])." *Severstal US Holdings LLC v. RG Steel LLC*, 865 F. Supp. 2d 430, 437 (S.D.N.Y. 2012).  Under Second Circuit precedent, "[a] party has refused to arbitrate if it commenced litigation or is ordered to arbitrate th[e] dispute [by the relevant arbitral authority] and fails to do so." *Id.* (quoting *LAIF X SPRL v. Axtel, S.A. de C.V.*, 490 F.3d 194, 198 (2d Cir. 2004)).  Here, the parties do not dispute that there was an agreement to arbitrate, and that the agreement is governed by the FAA.  *See* Compl. ¶ 34 (alleging that the parties entered into "a valid and enforceable contract"), ¶ 7 (alleging that the parties' agreement to "submit their accounting dispute for resolution by an independent accountant is an 'arbitration agreement' that 'fall[s] under' the New York Convention, within the

3

meaning of Chapter 2 of the Federal Arbitration Act"); Opposition to Motion to Compel Arbitration ("Opp."), at 9–10 (discussing the application of principles from the FAA to this dispute), ECF No. 22; Motion to Compel Arbitration or Dismiss ("Mot."), at 10–11, ECF. No. 17 (indicating that Section 2 of the FAA governs this dispute).  Nor do the parties dispute that Plaintiff refuses to submit this dispute to the IAF.

The FAA "reflect a [congressional] recognition of the desirability of arbitration as an alternative to the complications of litigation." *Severstal Holdings*, 865 F. Supp. 2d at 437 (quoting *Genesco Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987)).  The Act expresses "a 'strong federal policy favoring arbitration as an alternative means of dispute resolution.'" *Ragone v. Atlantic Video at Mahattan Ctr.*, 595 F.3d 115, 121 (2d. Cir. 2010); *see also Stena Line (U.K.) Ltd. v. Sea Containers, Ltd.*, 758 F. Supp. 934, 937 (S.D.N.Y. 1991) (finding that the FAA "created a federal policy favoring arbitration, which requires that courts rigorously enforce agreements to arbitrate").  Both the Supreme Court and the Second Circuit have repeatedly held that any doubts concerning the arbitrability of a dispute should be resolved in favor of arbitration.  *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003).  However, the presumption in favor of arbitration arises "only where a validly formed and enforceable agreement is ambiguous about whether it covers the dispute at hand." *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 130 S. Ct. 2487, 2859 (2010); *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).  "Arbitration under the [FAA] is a matter of consent, not coercion." *Granite Rock*, 130 S. Ct. at 2857.  It "is a way to resolve those disputes, and only those disputes, that the parties have agreed to submit to arbitration." *Id.*  "[C]ourts must place arbitration

agreements on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011).

When a party "unambiguously refuses to arbitrate, a court's role is limited to determining '(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement.'" *HBC Solutions, Inc. v. Harris Corp.*, No. 13-CV-6327, 2014 U.S. Dist. LEXIS 170983, at *4 (S.D.N.Y. Dec. 10, 2014) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996); *accord. Keystone Food Holdings Ltd. v. Tyson Foods, Inc.*, 492 F. Supp. 3d 134, 143 (S.D.N.Y. 2020). There is no dispute that the parties entered into a valid and enforceable agreement. Thus, the sole question is whether the disputes at issue fall within the scope of the arbitration agreement.

Plaintiff contends that the issue in this case—whether Defendants' values are timely and valid—is a question of law for the Court to decide, and thus outside the narrow scope of arbitration. *See* Opp., at 3. Defendants maintain that the timeliness and validity of the values fall within the arbitration clause, as they pertain to "determining whether the items and amounts in dispute were determined in accordance with the definitions, terms and condition of th[e] Agreement." Reply, at 2, ECF No. 2.

When faced with an ambiguity, "[i]n determin[ing] whether a particular dispute falls within the scope of an agreement's arbitration clause . . . a court should classify the particular clause as either broad or narrow." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218 (2d Cir. 2001). Narrow clauses "are limited 'to specific types of disputes' and must be construed differently than broad arbitration clauses." *Cytec Industries, Inc. v. Allnex (Luxembourg) & S.C.A.*, No. 14-CV-1561, 2015 U.S. Dist. LEXIS 82273, at *7

(S.D.N.Y. May 15, 2015) (quoting *McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 831 (2d Cir.1988)).  "Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." *Louis Dreyfus Negoce S.A.*, 252 F.3d at 224 (internal quotations omitted).  The parties agree that the agreement to submit disputes to the IAF is a narrow arbitration clause.

Where the arbitration is narrow, the question for the court is whether the parties' disputes are "'collateral issue[s],' or fall reasonably within the scope of the clause." *Keystone Food Holdings Ltd.*, 492 F. Supp. 3d at 144.  In light of the FAA's strong policy favoring arbitration, "any doubts concerning the scope of the arbitrable issue should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.  "Thus arbitration should be compelled unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. . . . Accordingly, a court can compel arbitration where . . . [the] arbitration provision can be interpreted to encompass the parties' disputes." *Severstal U.S. Holdings, LLC*, 865 F. Supp. 2d at 438–39 (internal citations and quotation marks omitted).

I find that the narrow clause is susceptible to an interpretation that covers the asserted dispute.  The clause permits the IAF to consider disputed amounts in the parties' respective calculations and to correct mathematical errors and determine whether the items and amounts in dispute were determined in accordance with the definitions, terms and conditions of the Agreement.  The Agreement provides that the parties can sue in specified courts of New York, but the provision pertains to disputes under the agreement other than those that the IAF is empowered to decide.  Plaintiff's effort to characterize the dispute as something else is without

6

merit. Defendants' updated calculations were "determined in accordance with the definitions, terms and conditions of the Agreement." The availability of a legal avenue for recovery does not render the dispute unarbitrable. *See Keystone Food Holdings Ltd.*, 492 F. Supp. 3d at 147 (discussing *Severstal U.S. Holdings, LLC*, 865 F. Supp. 2d at 443) (finding that contested adjustments were arbitrable disputes, even though the disputes could also be framed as claims for breach of representations and warranties). Because there is a plausible interpretation of the Agreement that encompasses the disputes at issue, "the FAA requires that I grant [Defendants'] motion to compel and submit these claims to [the IAF] for resolution." *Id.* at 149.

## CONCLUSION

For these reasons, Defendants' Motion to Compel Arbitration is granted. The parties shall appear for a status conference on, and the case is stayed, until October 21, 2022, 10:00 a.m. Oral argument scheduled for November 18, 2021 is cancelled. The Clerk shall terminate the motion (ECF No. 16).

SO ORDERED.

Dated:     October 29, 2021            ___/s/_Alvin K. Hellerstein____
           New York, New York          ALVIN K. HELLERSTEIN
                                       United States District Judge